**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**

| | |
|---|---|
| LARADA SCIENCES, INC., and UNIVERSITY OF UTAH RESEARCH FOUNDATION,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>PAM SKINNER d/b/a PROFESSIONAL LICE SOLUTIONS; PICKY PAM AT THE BEACH, LLC; PICKY PAM OF SAN DIEGO, LLC; MARCY MCQUILLAN d/b/a NITLESS NOGGINS; and UKU, INC. d/b/a NITLESS NOGGINS HEADLICE TREATMENT CENTER; and XPOWER MANUFACTURE, INC.,<br><br>　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT PICKY PAM AT THE BEACH, LLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br><br>Case No. 2:15-cv-0399-JNP<br><br>Judge Jill N. Parrish |

## INTRODUCTION

Before the court is Defendant Picky Pam at the Beach, LLC's ("Picky Pam") Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue. (Docket 48). In response to the patent infringement action brought by Plaintiffs Larada Sciences, Inc. and the University of Utah Research Foundation (collectively "Larada"), Picky Pam argues that it lacks the minimum contacts in Utah required for this court to exercise general or specific personal jurisdiction. In the alternative, Picky Pam argues that venue is improper. For the reasons stated below, the court GRANTS Defendant Picky Pam's motion to dismiss.

## FACTUAL BACKGROUND

Larada alleges that Picky Pam infringed on Larada's patents US 7,789,902 and US 8,162,999 (the "Patents"). Picky Pam is a small lice treatment center organized under the laws of California, with its principal place of business in Huntington Beach, California. As part of its lice

treatment business, Picky Pam offers a heat treatment designed to eradicate lice. It also sells the product used to administer these treatments, the "Dehydration Station," with sales totaling approximately twenty units to date.

Picky Pam has never owned or leased property, had a bank account, paid taxes, appointed an agent for service of process, solicited business, advertised by non-internet methods, or otherwise promoted its products in Utah. Picky Pam operates a website, accessible from any state, which describes, states the price for, and has promotional videos encouraging website visitors to purchase the Dehydration Station. Although users are currently unable to purchase the product through Picky Pam's website, Larada alleges that the website previously did so. Picky Pam's only sale to Utah occurred when, at Larada's request, it sold and shipped a Dehydration Station to Larada's headquarters so that Larada could evaluate whether the product infringed the Patents. While the parties dispute whether the sale was transacted through Picky Pam's website or via email, the terms and timing of the sale were at least partially negotiated by the parties' attorneys.

Prior to the organization of Picky Pam, Pam Skinner, now president of Picky Pam, entered into a rental agreement (the "Agreement") with Larada either in her individual capacity or on behalf of a company called Bernadette's at the Beach.[1] The Agreement provided for the lease of a machine that incorporated the patented methods. It contained a forum selection and choice of law provision for disputes arising from the Agreement stating that Utah law controlled and that jurisdiction and venue were proper in Utah. The Agreement also prohibited Ms. Skinner from copying the product, even after the termination of the Agreement. As part of the Agreement,

---

[1] It is unclear from the face of the Agreement whether Ms. Skinner signed the Agreement in her individual capacity or as an agent for Bernadette's at the Beach.

Ms. Skinner received training on how to operate the device according to Larada's proprietary methods.

In November 2013, Ms. Skinner terminated the Agreement. In early 2014, Ms. Skinner began offering heat treatments to eradicate lice under the name Picky Pam at the Beach. However, Picky Pam was not formally organized as an LLC until December, 2014. Believing that the heat treatments infringed on the Patents, Larada sent Ms. Skinner a cease and desist letter in April of 2014, which she promptly signed.

Ms. Skinner then began to sell a product called the "Lice Device." Larada again claimed infringement and asserted that in March 2015, when it tested the product in the presence of Picky Pam's attorney, the attorney abruptly ended the tests and the Lice Device website was taken down soon thereafter. Subsequently, Picky Pam allegedly modified the device, creating a new product called the Dehydration Station, so that it did not operate within the temperature ranges covered by the Patents. Picky Pam notified Larada that it had tested the Dehydration Station and intended to sell it. At that point, Larada and Picky Pam completed the sale described above. As a result of its evaluation, Larada concluded that the product operated within the temperature range covered by the Patents. This litigation followed.

## LEGAL STANDARD

Where, as here, the parties have not conducted discovery or participated in an evidentiary hearing,[2] "the plaintiff need[ ] 'only . . . make a prima facie showing' that the defendants [are] subject to personal jurisdiction." *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003) (quoting *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002)). As with any 12(b)(2) motion, the court construes all

---

[2] Neither party requested an evidentiary hearing here.

well-pled factual allegations in the light most favorable to the plaintiffs. *Graphic Controls Corp.*

*v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1383 n.1 (Fed. Cir. 1998).

## DISCUSSION

Under Rule 4 of the Federal Rules of Civil Procedure, effective service of process

establishes personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of

general jurisdiction in the state where the district court is located." Fed R. Civ. P. 4(k)(1)(A).

Accordingly, the court first considers whether the Utah long-arm statute authorizes personal

jurisdiction over Picky Pam.

The Utah Supreme Court has interpreted the Utah long-arm statute as extending personal

jurisdiction to the maximum extent allowed by the Due Process Clause of the United States

Constitution. *Starways, Inc. v. Curry*, 980 P.2d 204, 206 (Utah 1999). Thus, the court conducts a

collapsed due process inquiry—if Picky Pam's contacts with Utah are such that due process is

satisfied, personal jurisdiction is appropriate.

Because all of the claims in this case involve patent infringement, the Court applies the

Federal Circuit's due process analysis. *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377

(Fed. Cir. 1998) (explaining that for patent-related claims, "when analyzing personal jurisdiction

for purposes of compliance with federal due process, Federal Circuit law, rather than regional

circuit law, applies"). The court therefore begins by considering whether Picky Pam's contacts

with Utah give rise to either general personal jurisdiction or specific personal jurisdiction.

## I.    Picky Pam is Not Subject to General Personal Jurisdiction in Utah.

A court may exercise general jurisdiction over a defendant when the defendant's contacts

with the forum are "so 'continuous and systematic'" that the defendant is "essentially at home in

the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Goodyear Dunlop*

*Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). Here, the parties agree that Picky

Pam does not have contacts in Utah sufficient to give rise to general personal jurisdiction. The court therefore confines its inquiry to whether Picky Pam is subject to specific personal jurisdiction in Utah.

## II.     Picky Pam is Not Subject to Specific Personal Jurisdiction in this Case.

The Federal Circuit applies a three-part test to determine whether specific jurisdiction exists. A defendant will be subject to specific personal jurisdiction only when (1) a defendant has the requisite minimum contacts in the forum established by purposeful direction toward the forum, (2) the plaintiff's claims "arise[] out of or relate[] to the defendant's activities with the forum," and (3) the exercise of jurisdiction is reasonable and consistent with traditional notions of fair play and substantial justice. *Silent Drive*, 326 F.3d at 1201–02 (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)).

The minimum contacts test guarantees that out-of-state defendants receive "fair warning" that they may be subject to suit in a foreign forum. The test is met where the "quality and nature" of the defendant's contacts demonstrate that she purposefully directed her activities toward the forum State and it is foreseeable that she will be haled into the forum's courts as a result of those activities. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). This purposeful direction requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted). Although a single act may be sufficient to demonstrate purposeful availment, the unilateral acts of a third party are not. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957);

*Hanson*, 357 U.S. at 253; *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998). The exercise of jurisdiction must be foreseeable in the sense that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980); *see also Burger King*, 471 U.S. at 474 ("Although it has been argued that foreseeability of causing *injury* in another State should be sufficient to establish such contacts there when policy considerations so require, the Court has consistently held that this kind of foreseeability is not a 'sufficient benchmark' for exercising personal jurisdiction." (footnote omitted)).

Larada relies on four facts in arguing that Picky Pam has the requisite minimum contacts to subject it to personal jurisdiction in Utah. First, Picky Pam operates a website that is accessible to Utah residents. Second, Picky Pam sold and shipped an allegedly infringing product to Larada. Third, Picky Pam directed tortious activities toward Larada. Fourth, Ms. Skinner signed the Agreement with a forum selection clause. The court will address each of these arguments in turn.

A.      The court cannot base personal jurisdiction on Picky Pam's website.

As evidence of Picky Pam's purposefully directed activities, Larada points to Picky Pam's website. In so doing, it relies heavily on the "sliding scale" framework outlined in a 1997 federal district court decision, *Zippo Manufacturing Co. v. Zippo Dot Com*, *Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). Under this framework, "active websites," which facilitate internet transactions by the repeated and knowing transmission of files, nearly always establish the minimum contacts necessary for jurisdiction. *Id.* But "passive websites," which do little more than provide information, do not. *Id.* For "interactive websites," which fall in the middle of the scale, jurisdiction depends on the "level of interactivity and commercial nature of the exchange

of information that occurs on the Web site." *Id.* But the *Zippo* sliding scale framework has never been adopted by the Federal Circuit. In fact, there is considerable uncertainty in the Federal Circuit, as in many others, as to how internet contacts and websites should be treated when evaluating personal jurisdiction. *See, e.g.*, *Roblor Mktg. Grp., Inc. v. GPS Indus., Inc.*, 645 F. Supp. 2d 1130, 1138–42 (S.D. Fla. 2009) (citing numerous divergent cases from various circuit courts). Accordingly, the court must first determine whether to apply the *Zippo* sliding scale framework in this case.

             1)      The court finds the Zippo sliding scale to be unpersuasive.

The parties disagree on how Picky Pam's website should be classified for purposes of the *Zippo* sliding scale test. However, taking the allegations in the Complaint as true, it is clear that Picky Pam's website was "highly interactive." The website, at least until the lawsuit was filed, allowed users to place orders for products. It did more "than make information available to those who are interested in it." *Zippo*, 952 F. Supp. at 1124. Because the "defendant clearly [did] business over the internet," the website falls on the highly interactive "end of the spectrum." *Id.* Under *Zippo*, this court would have personal jurisdiction over Picky Pam based solely on the existence of its website. This would be the case even though Larada has not pled any facts to suggest that any Utah resident other than those related to Larada *actually* viewed or interacted with Picky Pam's website.

The lack of any specific instances of Picky Pam's physical or digital contacts with Utah demonstrates why the *Zippo* sliding scale should not replace traditional personal jurisdiction analysis. Specifically, it highlights *Zippo's* primary defect: the *Zippo* test effectively removes geographical limitations on personal jurisdiction over entities that have interactive websites. And because the number of entities that have interactive websites continues to grow exponentially,

application of the *Zippo* framework would essentially eliminate the traditional geographic

limitations on personal jurisdiction.

Under Larada's view, every court in every state could exercise personal jurisdiction over

Picky Pam simply because it maintained an interactive website. Were the court to adopt such an

approach, "then the defense of personal jurisdiction, in the sense that a State has geographically

limited judicial power, would no longer exist." *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293

F.3d 707, 712 (4th Cir. 2002). This is an "untenable result" that exposes the primary flaw in the

*Zippo* test. *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011).

The weakness of the *Zippo* approach becomes ever more apparent in today's digital age.

The ability to create and maintain an interactive website is no longer the sole domain of

technologically sophisticated corporations. Virtually all websites, even those created with only

minimal expense, are now interactive in nature. It is an extraordinarily rare website that does not

allow users to do at least some of the following actions: place orders, share content, "like"

content, "retweet," submit feedback, contact representatives, send messages, "follow," receive

notifications, subscribe to content, or post comments. And those are only interactions

immediately visible to the user. In fact, most websites also interact with the user "behind the

scenes" through the use of cookies. Thus, even a website that appears passive in nature may

actually be interacting with the user's data and custom-tailoring the content based on the user's

identity, demographics, browsing history, and personal preferences.[3] In addition, there is an ever-

increasing amount of internet contact that is done through the use of mobile apps that bypass the

traditional website altogether. This increase in mobile computing allows entirely new

---

[3] It is worth noting that many of these now-ubiquitous interactive features did not exist in 1997 when *Zippo*
was decided.

interactions. These applications routinely send notifications, are location based, and share data with other applications.

Furthermore, maintaining an interactive website is no longer the sole purview of corporations. In fact, with the invention of social media, many individuals, to say nothing of organizations, maintain an interactive website. In a matter of minutes, an individual can create a Facebook account and upload content to his or her own[4] "Facebook page." That page may allow all other Facebook users to interact with it.[5] The level of interactivity on even the most basic Facebook page arguably exceeds that of even the most interactive website in 1997 when *Zippo* was decided. It is difficult to envision a website that is more interactive than the average Facebook page. Indeed, a principal purpose of social media is to facilitate interactions between users.

Given the exponential growth in the number of interactive websites, the *Zippo* approach—which would remove personal jurisdiction's geographical limitations based on the mere existence of those websites—is particularly troubling. And the problem would grow more acute every year as more individuals and businesses create interactive websites.

This court is not alone in its criticism of the *Zippo* sliding scale as a replacement for traditional personal jurisdiction analysis. The Second Circuit has cautioned that the *Zippo* sliding scale "does not amount to a separate framework for analyzing internet-based jurisdiction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir. 2007) (quoting *Best Van Lines, Inc. v.*

---

[4] While it is true that individuals or organizations do not actually own or maintain the technological infrastructure of their Facebook pages, they do create and maintain most of the content. Accordingly, it would appear that the *Zippo* test would treat the individual or organization that created the page as maintaining a "highly interactive website."

[5] The court recognizes that one possible way to distinguish Facebook activities from the *Zippo* test is that *Zippo* referred to commercial activity, and most individual social media pages are not maintained for commercial purposes. It is unclear, however, why this distinction should make any difference for purposes of personal jurisdiction. Nothing requires that the "purposeful availment of the forum" be for commercial purposes. Indeed, "purposeful availment" is often for personal, recreational, or other non-commercial purposes.

*Walker*, No. 03 Civ 6585(GEL), 2004 WL 964009, at *3 (S.D.N.Y. May 5, 2004)). Rather, "traditional statutory and constitutional principles remain the touchstone of the inquiry." *Id.* (quoting *Best Van Lines*, 2004 WL 964009, at *3); *see Roblor Mktg. Grp.*, 645 F. Supp. 2d at 1138–42 (citing cases and "shar[ing] in the criticism of over-reliance on the sliding scale").

The traditional tests are readily adaptable to the digital age, just as they were to technological advances like the telegraph, radio, television, and telephone. *See Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 510–11 (D.C. Cir. 2002) (explaining that "our traditional notions of personal jurisdiction" are adaptable to the internet context). Indeed, the telephone provides an apt analogy. Although a company may have a public telephone number that can be dialed from every state, it is not necessarily subject to personal jurisdiction in every state. Rather, personal jurisdiction based on telephonic contacts can only be based on *actual* phone calls. Similarly, personal jurisdiction based on a website should be based on *actual* use of the site by forum residents.

In short, this court finds *Zippo* to be unpersuasive. The traditional tests for personal jurisdiction are readily applicable to internet-based conduct and are therefore controlling under Federal Circuit law.

> 2)  Picky Pam has not purposefully availed itself of the Utah forum via its website.

Under traditional personal jurisdiction analysis, the court must consider whether Picky Pam's website constitutes a purposeful availment of the Utah forum. By its very nature, the internet allows individuals and businesses to create a presence that is visible throughout the United States and the world. Even so, "one cannot purposefully avail oneself of 'some forum someplace.'" *Revell v. Lidov*, 317 F.3d 467, 475 (5th Cir. 2002). Rather, the defendant must have purposefully targeted its activities toward a particular forum, such that it should "reasonably

anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297. In that sense, the analysis of the availability of a website in any forum should track the analysis in "stream of commerce cases" where the defendant distributes products into the national stream of commerce. As the Supreme Court has explained, "the placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State . . . ." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987).

Specific personal jurisdiction may be based only on the defendant's contacts that give rise or relate to the claims at issue. Thus, the court focuses its inquiry on whether any of Picky Pam's contacts with Utah via its website give rise or relate to a claim for patent infringement. A patent infringement claim arises when the alleged infringer "without authority makes, uses, offers to sell, or sells any patented invention." 35 U.S.C. § 271(a). In this case, other than the single product sold at Larada's request for purposes of testing, there is no evidence that Picky Pam made or sold any allegedly infringing products in Utah.[6] But the court has specific personal jurisdiction only if Picky Pam established contacts with Utah by offering to sell the allegedly infringing products to Utah residents.

For purposes of Section 271, the Federal Circuit defines the term "'offer to sell' . . . according to its ordinary meaning in contract law, as revealed by traditional sources of authority." *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1255 (Fed. Cir. 2000). An offer to sell occurs when a party has "communicated a 'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" *Id.* at 1257 (quoting Restatement (Second) of Contracts § 24 (1979)).

---

[6] As discussed below, this sale must be ignored for purposes of personal jurisdiction analysis.

In the context of patent infringement, the Federal Circuit has construed "offer to sell" broadly. For instance, it was an offer to sell where a defendant "provided potential California customers with price quotations, brochures, specification sheets, videos, and sample parts." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed. Cir. 2005) (discussing the Federal Circuit's holding in *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373 (Fed. Cir. 1998)). This was because the substance of the letters conveyed a "description of the allegedly infringing merchandise and the price at which it [could] be purchased." *Id.* (quoting *3D Sys.*, 160 F.3d at 1379). Nevertheless, a plaintiff must still present "relevant evidence to support its claim that [the defendant] offered to sell the accused [product]." *Id.* If there is no evidence that what would otherwise constitute an offer was actually communicated or "manifested" to the relevant party, the existence of an offer has not been demonstrated. Similarly, as was explained by a federal district court in South Carolina:

> [T]here are no allegations that any South Carolina resident accessed Centricut's web page. Even assuming that the web site constitutes an offer to sell under the patent laws, Plaintiff makes no factual demonstration that Centricut's Internet "offers to sell" actually were made in South Carolina, by virtue of a consumer visiting the site. Without some other substantial act, the web page is not an offer to sell allegedly infringing products in South Carolina under 35 U.S.C. § 271(a).

*ESAB Grp., Inc. v. Centricut, LLC*, 34 F. Supp. 2d 323, 333 (D.S.C. 1999) (footnote omitted); *see Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003) (recognizing requirement that "defendant intentionally interact with the forum state via the web site in order to show purposeful availment").

The Federal Circuit has indicated that one important factor for evaluating purposeful availment in the internet context is "whether any [forum] residents have ever actually used [the defendant's] website to transact business." *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005) (vacating motion to dismiss for lack of personal

jurisdiction on other grounds). For example, despite finding that the defendant's "websites contain[ed] some interactive features aimed at transacting business," the Federal Circuit stated that it did not have enough information to decide whether the websites alone justified specific jurisdiction, in part because it was "unclear how frequently those features are utilized" or whether the site was accessed by forum residents. *Id.*

In this case, to establish that Picky Pam purposefully availed itself of the Utah forum, Larada must show that Picky Pam either "intentionally targeted Utah users or that Utah users actually interacted with [the] website." *iAccess, Inc. v. Webcard Techs., Inc.*, 182 F. Supp. 2d 1183, 1187 (D. Utah 2002). At the motion to dismiss stage, Larada need only provide factual allegations that, taken as true, indicate Picky Pam made an offer to sell to a resident of Utah (other than those related to Larada). Even viewing all well-pleaded facts in the light most favorable to Larada, it has not satisfied its minimal burden in this regard.

Larada alleges that Picky Pam's website is "highly interactive" and that it encourages website viewers to purchase Picky Pam's products. Larada also makes factual allegations suggesting Picky Pam's website was, prior to the filing of this litigation, capable of facilitating commercial transactions. But Larada has failed to plead any facts suggesting Picky Pam either intentionally targeted Utah residents or made any offers to sell the allegedly infringing products to Utah residents.

Likewise, Larada has failed to plead any facts showing any Utah resident (other than those related to Larada) ever visited Picky Pam's website. Thus, even assuming the website constitutes an offer to sell under Federal Circuit law, there is no evidence that Picky Pam ever made an offer to sell an allegedly infringing product to a Utah resident via its website. Without

such evidence, the court cannot find that Picky Pam's website creates sufficient minimum contacts with Utah to constitute purposeful availment of the Utah forum.

      B.      The sale to Larada is not evidence of purposeful availment.

Larada contends that Picky Pam purposely directed its activities toward the Utah forum by selling and sending a Dehydration Station unit to Larada in Utah. Picky Pam responds that it sold the product to Larada only in response to Larada's request that it provide the product for testing so Larada could determine whether it infringed on Larada's Patents. Courts analyzing similar factual circumstances have routinely held that minimum contacts cannot arise from the unilateral acts of a third party. *Red Wing Shoe*, 148 F.3d at 1359. In other words, "contact initiated and business solicited by a plaintiff, rather than a non-resident defendant, cannot provide a sufficient basis on which to conclude that the defendant purposefully availed itself of a particular forum." *Frontier Paper & Packaging, Inc. v. E & S Paper Co.*, No. 1:06-cv-1485-SEB-JPG, 2007 WL 1836884, at *9 (S.D. Ind. June 22, 2007). For instance, a defendant whose only contact with the forum State was initiated by the plaintiff's request for a sample was found not to have purposefully directed commercial activity toward the forum. *Id.*; *see also Schlumberger Tech. Corp. v. Greenwich Metals Inc.*, Civil Action No. 07-2252-KHV, 2008 WL 4758589, at *3 (D. Kan. Oct. 27, 2008). Similarly, a court found that an internet-based sale, allegedly arranged by a patent holder in order "to allow it to purchase a sample of the infringing products," could not be used to establish jurisdiction because "[o]nly those contacts with the forum that were created by the defendant, rather than those manufactured by the unilateral acts of the plaintiff, should be considered for due process purposes." *Edberg v. Neogen Corp.*, 17 F. Supp. 2d 104, 108, 112 (D. Conn. 1998).

Even if these cases were inapplicable here, the court still could not find that the sale to Larada, which appears to have been partially arranged by an email exchange between the parties'

attorneys, constitutes the type of purposeful direction necessary to satisfy the minimum contacts test. That Picky Pam agreed to sell Larada a Dehydration Station in order to allow Larada to test the product does not show that it directed its commercial activities toward the Utah forum.

      C.      Picky Pam did not direct tortious activities toward Utah.

Larada also argues that Picky Pam purposefully availed itself of the Utah forum by intentionally directing "tortious activities" toward Larada. As with any purposeful availment analysis, the key inquiry remains whether Picky Pam directed its activities toward the Utah forum in such a way that it was foreseeable that it would be haled into court there. *World-Wide Volkswagen*, 444 U.S. at 297. Larada excerpts several quotes from Picky Pam's current and former websites, which reference a former lice dehydration system that was expensive and unavailable for purchase. Larada suggests that the statements refer to its product and therefore that Picky Pam is targeting Larada and it business model in Utah.

On this point, Larada relies on *Calder v. Jones*, in which the Supreme Court held that a magazine that purposely directed its fraudulent communications at residents of the forum by publishing a libelous article in which the forum was "the focal point both of the story and of the harm suffered" "knew that the brunt of the injury would be felt [there] and . . . must 'reasonably anticipated being haled into court there.'" *Calder v. Jones*, 465 U.S. 783, 789–90 (1984) (quoting *World-Wide Volkswagen*, 444 U.S. at 297). But unlike the libelous story in *Calder*, the quoted website statements do not demonstrate that Picky Pam in any way directed its activities toward Utah. Although the website refers, in general terms, to a product like the one produced by Larada, there are no references to Utah and no evidence that Picky Pam intended the statements to reach forum residents. The instant dispute is further distinguishable from *Calder* in that the quoted statements do not underlie any cause of action that Larada seeks to advance. Moreover, Larada has not alleged that the statements were viewed by Utah residents other than the Larada.

It is true that the impact of any infringement of Larada's Patents—whether directed at Utah or not—would be felt in Utah. But the Federal Circuit has held that for jurisdictional purposes in patent infringement cases, "the situs of the infringement is wherever an offending act is committed"—not where the injury is felt. *N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994) ("[T]he [patent] statute on its face clearly suggests the conception that the 'tort' of patent infringement occurs where the offending act is committed and not where the injury is felt."); *see also Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 769 F.3d 1371, 1380 (Fed. Cir. 2014). Because Larada has not alleged that an act of patent infringement occurred in Utah, specific jurisdiction cannot be based on the mere fact that the patent owners reside in Utah.

D.   The Agreement between Larada and Ms. Skinner cannot be attributed to Picky Pam for jurisdictional purposes.

Larada further argues that the Agreement executed by Ms. Skinner on behalf of another company, Bernadette's at the Beach, is evidence of Picky Pam's purposeful direction to the Utah forum. Picky Pam responds that while the Agreement was terminated in November 2013, the entity Picky Pam was not formed until December 2014, over one year later.

As a general rule, corporations and limited liability companies cannot be held liable for the acts of those who form them. *Murry v. Monter*, 60 P.2d 960, 962 (Utah 1936); *see also Bishop v. Parker*, 134 P.2d 180, 181 (Utah 1943) (holding that unless contract for preorganization services was "subsequently ratified or approved by corporate action, no liability would attach to the corporation").

> It is a fundamental principle of law that at least two competent parties are necessary to the execution of a contract, and parties cannot be competent within the meaning of this principle unless they are in existence. Hence, until a corporation has come into being, it cannot contract as a corporation.

1A *Fletcher Cyc. Corp.* § 205 (2015). Because a corporate entity cannot be a party to a contract that pre-dates its existence, the entity "cannot be considered a party to the contract and bound to it in disregard of the distinction between the corporate entity and its members." *Id.* Even in cases where a promoter or organizer entered into contracts for services essential to the formation of the incipient corporation, the corporation itself could not be liable for those acts. *See, e.g.*, *Bishop*, 134 P.2d at 181. This is true even if the organizers are the LLC's only members. 1A *Fletcher Cyc. Corp.* § 205  ("For purposes of contracting, it makes no difference that the promoters are the corporation's only shareholders or members; and the corporation is therefore not liable on their contracts in the absence of a statute or charter provision or a corporate act of adoption or ratification or novation.").

There are, of course, exceptions to the general rule, including that the entity may be responsible for preorganization contracts of members when the entity expressly ratifies or chooses to retain the benefits of the contracts, or the entity is merely an alter ego of the organizers. *In re Rothman*, 204 B.R. 143, 152 (Bankr. E.D. Pa. 1996) (noting that in such cases, "[t]he relevant inquiry is not whether the contract benefitted the corporation, but rather whether the corporation accepted the benefits of the contract"); *Woodland Nursing Home Corp. v. Harris*, 514 F. Supp. 110, 113–14 (S.D.N.Y. 1981) (applying New York law). Nevertheless, courts are generally reluctant to disregard the corporate form unless "specific, unusual circumstances call for an exception." *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 552 (Fed. Cir. 1990) (quoting *Zubik v. Zubik*, 384 F.3d 267, 273 (3d Cir. 1967)); *3D Sys.*, 160 F.3d at 1380 ("[T]he corporate form is not to be lightly cast aside.").

Larada argues that *Burger King* supports its position that the contract signed by Ms. Skinner gives rise to personal jurisdiction over Picky Pam. In *Burger King*, the defendant

franchisee terminated the franchise contract but continued to operate using the Burger King brand. Personal jurisdiction existed, at least in part, because the defendant had signed a contract providing for the application of Florida law. *Burger King*, 471 U.S. at 487. This case is easily distinguishable from *Burger King*, where the defendant *himself* entered the franchising agreement, because Picky Pam was never party to the rental agreement. Hence, even assuming that Ms. Skinner signed the Agreement in her individual capacity, the Agreement is not evidence of Picky Pam's contacts with Utah because it was executed before the entity came into existence.

Larada fails to advance any compelling reason why the court should disregard the corporate form and attribute to Picky Pam the Agreement Ms. Skinner signed before Picky Pam was organized. Larada has not made any factual allegations that would suggest that Picky Pam is merely the alter ego of Ms. Skinner or that Picky Pam ratified or chose to retain the benefits of the Agreement. Because Picky Pam cannot be held liable—contractually or otherwise—for the preorganization acts of its members, the court cannot exercise personal jurisdiction over it on the basis of an agreement that predates its formation.

## CONCLUSION

Because Larada failed to make a *prima facie* case that Picky Pam purposely directed itself to the Utah forum, exercising personal jurisdiction over Picky Pam is not consistent with due process. Therefore, IT IS HEREBY ORDERED that Defendant Picky Pam's motion to dismiss is GRANTED and that Larada's Complaint against Picky Pam is dismissed. Picky Pam's motion to dismiss on grounds of improper venue is therefore moot.

DATED December 2, 2015.

BY THE COURT: .

Jill N. Parrish
United States District Judge

18